IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **CRAIG D. THOMPSON, #293-520,** | * | |
| **Petitioner,** | * | |
| **v.** | * | **CIVIL ACTION NO. PWG-13-1346** |
| **DAYENA CORCORAN, et al.,** | * | |
| **Respondents.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM OPINION

Petitioner Craig D. Thompson, a prisoner at the Maryland Correctional Institution-Jessup, has filed a writ of habeas corpus challenging the manner in which he was arrested and imprisoned. Pet. ¶ 1, ECF No. 1.[1]  Respondents argue that Thompson's petition for writ of habeas corpus should be dismissed because (1) Thompson has failed to demonstrate that he has exhausted his state court remedies and (2) the Petition is untimely.  Resp., ECF No. 11. Thompson asserts that all issues have been exhausted and that the petition is timely.  Reply, ECF No. 12.  After reviewing these papers, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts; see also* 28 U.S.C. §2254(e)(2).  For reasons set forth herein, the court shall dismiss the petition with prejudice as untimely.

## Procedural History

On January 28, 2007, after a jury trial in the Circuit Court for Prince George's County,

---

[1]     The petition has two parts: (1) a form used by persons filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 and (2) a typed body of the petition with numbered paragraphs. Citations to the form portion of the petition refer to the page number of the petition.  Citations to the body portion of the petition refer to the paragraph number of the petition.

Thompson was found guilty of first degree assault, reckless endangerment, use of a handgun in the commission of a felony, and carrying a handgun. Pet. 2; Thompson Aff. ¶ 4, ECF No. 1-1. He was sentenced on May 25, 2007, to a total of 15 years and was given credit for 352 days time served.[2] Thompson Aff. ¶ 6. Thompson appealed his conviction, but on March 4, 2009, the Court of Special Appeals denied his application for leave to appeal. Pet. 3. Thompson filed a petition for writ of certiorari to the Court of Appeals of Maryland, but on May 11, 2012, that, likewise, was denied. *Id.*; Pet. ¶ 39. He did not file a petition for writ of certiorari to the United States Supreme Court. *Id.*; Pet. 3.

While Thompson's appeal was proceeding, a series of events unfolded. On May 30, 2007—five days after he was sentenced and committed to the Prince George's County Detention Center—he was summoned to the unit custodial officer's work station and told that he was being released "all the way out."[3] Pet. ¶ 6. However, when he reached the parking lot of the detention center, he was arrested by U.S. Marshals and transported to the District of Columbia jail. *Id.*; Thompson Aff. ¶ 9. Thompson appeared before the U.S. Parole Commission sometime in July 2007 and was sentenced to three years in federal prison; he was subsequently transferred to the

---

[2]  On June 7, 2006, Thompson surrendered to the Prince George's County Detention Center because he was wanted by the Prince George's County Police Department for attempted murder. Thompson Aff. ¶¶ 1-2. He was released on bail. *Id.* at ¶ 1. He states that he was housed at the District of Columbia jail beginning in August 2006 because of "a pending legal matter before the United States Parole Commission." *Id.* ¶ 2. Thompson was subsequently extradited to Prince George's County for trial. *Id.* ¶ 3.

[3]  According to Thompson, "'[a]ll the way out' is a term commonly used" by Prince George's County Detention Center officials, meaning that an inmate "is released from custody without any detainers, outstanding warrants, or a sentence to serve in custody." Pet. ¶ 6 n.1. Thompson provides no documentary evidence to support his assertion that he was told he was being released "all the way out."

U.S. Bureau of Prisons to serve his federal sentence.[4]  Pet. 9; Thompson Aff. ¶¶ 10-11.  During his time in federal prison, both Thompson and federal prison officials made several inquiries of Prince George's County regarding any detainers or outstanding warrants for Thompson and were told that there were "no pending charges or active warrants . . . ."  Thompson Aff. ¶ 13; ECF No. 1-4.[5]  After a standard National Crime Information Center (NCIC) check, Thompson was released to a halfway house, obtained employment, and, ultimately, was placed on home confinement.  Pet. ¶ 11-12; Thompson Aff. ¶¶ 15-18.  Upon his release on parole, Thompson maintained good standing with his supervision officer.  Pet. ¶ 14; Thompson Aff. ¶ 20.

On or about April 17, 2009, Assistant State's Attorney Rashid Mahdi filed a motion for appropriate relief, seeking to have Prince George's County Circuit Court Judge Dwight Jackson incarcerate Thompson to serve the fifteen-year sentence the judge had imposed on May 25, 2007.  Pet. ¶ 15; Thompson Aff. ¶ 22.  A hearing on the motion was held on July 10, 2009.  Pet. ¶ 16; Thompson Aff. ¶ 23; 7/10/09 Hrng. Tr., Pet., Ex. 9, ECF No. 1-10.  The judge reserved judgment[6] and continued the hearing for one week at the Assistant State's Attorney's request,

---

[4]     Thompson does not state why he appeared before the U.S. Parole Commission and received a three-year sentence or provide any evidence relating to his "pending legal matter" before the Commission."  Thompson Aff. ¶ 1.

[5]     Although Thompson states that his Bureau of Prisons case manager received documentation from Prince George's County regarding the absence of pending charges or active warrants, Thompson Aff. ¶ 13, he has not included such documentation as an exhibit to his Petition before this court.

[6]     Judge Jackson had indicated his intention to deny the motion, stating that:

> I have to.  I don't have any authority to do anything other than what I have already done which is sentence this man.  The man has been sentenced.  Someone needs to go to the Executive Branch of government and find out why someone is . . . not following the directives made to them by the judicial branch of government.  I don't lodge detainers.  I sentence people.

7/10/09 Hrng. Tr. 8.

7/10/09 Hrng. Tr. 8-9, and Thompson was released pending the upcoming hearing date. Pet. ¶ 19; Thompson Aff. ¶ 25.

The hearing never took place. On July 13, 2009, Warden Felicia Hinton of the Maryland Reception, Diagnostic, and Classification Center issued a "Maryland Division of Correction Retake Warrant For Arrest plus Detention of Escaped Prisoner," alleging that Thompson was under legal commitment to the Maryland Department of Correction, was released by federal authorities erroneously and escaped from his place of detention. Thompson Aff. ¶ 26; Retake Warrant, Pet., Ex. 11, ECF No. 1-12. Thompson was arrested at his home the following day. Pet. ¶ 21; Thompson Aff. ¶ 28. He was transported to the District of Columbia jail for being a fugitive from justice. Thompson Aff. ¶¶ 29-30. On July 15. 2009, a detective with the District of Columbia Metropolitan Police Department filed a criminal complaint charging Thompson with being a fugitive from the State of Maryland with the underlying charge of first-degree assault occurring on June 18, 2007.[7] Pet. ¶ 23; Thompson Aff. ¶ 31; Crim. Div. Compl., Pet., Ex. 13, ECF No. 1-14. The detective also filed an affidavit with the District of Columbia Superior Court in which she attested that the Maryland Department of Fugitives received a NCIC hit indicating that Thompson was wanted by Prince George's County on a warrant dated June 18, 2007. Thompson Aff. ¶ 32; Aff. in Support of Arrest Warrant, Pet., Ex. 14, ECF No. 1-15. The warrant was confirmed by the Prince George's County Sheriff's Office. Thompson Aff. ¶ 32. Petitioner, because he knew that he was in federal custody on June 18, 2007, waived extradition to Maryland. Pet. ¶ 23; Thompson Aff. ¶ 33. Although the Prince George's County deputies did not have the proper documentation, D.C. jail officials released Thompson to their custody on July 17, 2009. Pet. ¶ 26; Thompson Aff. ¶ 35. On arrival at the Prince George's County

---

[7]     Thompson provides no information regarding the June 18, 2007, assault.

Detention Center, there was confusion as to whether Thompson was there on an assault warrant[8] or was a recommit.[9]   Pet. ¶ 22; Thompson Aff. ¶¶ 36-37.   Thompson was transferred to the Maryland Department of Correction on July 30, 2009.   Pet. ¶ 28; Thompson Aff. ¶ 41.

On October 4, 2010, Thompson filed an application for writ of habeas corpus in the Circuit Court for Prince George's County.   Reply 2; State App., Reply, Ex. 1, ECF No. 12-1. Because that application "went unanswered," on April 21, 2011, Thompson filed a petition for a writ of habeas corpus for immediate release from illegal confinement in the Court of Special Appeals of Maryland.   Reply 2; Pet. for Immediate Release, Reply, Ex. 2, ECF No. 12-2.   The Court of Special Appeals referred the matter to the Circuit Court for Prince George's County by order dated May 18, 2011.   Reply 2; Order, Reply, Ex. 3, ECF No. 12-3.   Without holding a hearing, Judge Maureen Lamasney denied the petition for habeas corpus in a decision dated July 15, 2011.   Pet. 4; Reply 2; Order of the Court, Reply, Ex. 4, ECF No. 12-4.   Petitioner next filed a *pro se* motion and notice for *en banc* review by the circuit court, followed by a memorandum in support thereof.   Reply 2; Reply, Ex. 5,  ECF No. 12-5.   A hearing before a three-judge panel was held on December 21, 2011.[10]   Reply 2.   The panel unanimously upheld the circuit court's denial of Thompson's request for writ of habeas corpus.   Reply 2; Memorandum and Order of Court, Reply, Ex. 8, ECF No. 12-8.   On March 23, 2012, Thompson, through counsel, filed a petition for writ of certiorari to the Maryland Court of Appeals.   Reply 3; Reply, Ex. 9, ECF No.

---

[8]      Thompson notes that he was never charged in the Prince George's County District Court with first-degree assault which supposedly occurred on June 18, 2007.   Thompson Aff. ¶ 39. Nor was he charged administratively or criminally with escaping from the Prince George's County Detention Center.   *Id.* at ¶ 42.   Thompson also states that he was never in the custody of the Maryland Reception, Diagnostic, and Classification Center.   *Id.* at ¶ 27.

[9]      Presumably, the term "recommit" refers to Warden Hinton's retake warrant.

[10]      Thompson was represented by counsel at the December 21, 2011, hearing.   Reply, Ex. 6, ECF No. 12-6.

12-9. That court denied Thompson's request on May 11, 2012, stating that "there has been no showing that review by certiorari is desirable or in the public interest." Order, Reply, Ex. 10, ECF No. 12-10.

Thompson's federal petition was filed in this court on April 30, 2013. *See* Pet.[11]

### Threshold Issues

#### Exhaustion

As a matter of comity, in general a federal habeas petitioner must first exhaust claims in state court; failure to exhaust a claim requires its dismissal by the federal court. *See* 28 U.S.C. § 2254(b)(1)(A); *Granberry v. Greer*, 481 U.S. 129, 134 (1987); *Rose v. Lundy*, 455 U.S. 509, 515–19 (1982).   The exhaustion requirement is satisfied when (1) a petitioner has fairly presented all claims in state court, or (2) if no state remedies are currently available to the petitioner. *See Gray v. Netherland*, 518 U.S. 152, 161 (1996).  Fair presentation requires the petitioner to present the same claims to all appropriate state courts. *See Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds by United States v. Barnette*, 644 F.3d 192, 217 (4th Cir. 2011).  Both the operative facts and the controlling legal principles must be presented to the state court. *Picard v. Connor*, 404 U.S. 270, 277 (1971).  This requirement is designed to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999), and is satisfied by presenting the claim to the state's highest court on either direct or collateral review, *id.* at 844–45.

---

[11]    According to Respondents, the instant petition was filed on May 7, 2013. Resp. 9. However, the petition is deemed filed on the date a prisoner places it in the prison mail system. *Houston v. Lack*, 487 U.S. 266, 276 (1988); *United States v. Dorsey*, 988 F. Supp. 917, 920 (D. Md. 1998).  Thompson signed the petition on April 30, 2013, and gave it to prison officials on that date. *See* Pet.; Reply 4.

## Procedural Default

The procedural default doctrine ensures that "state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding." *Picard*, 404 U.S. at 276; *see also* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of remedies available in state court). Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489–91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46–47 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 482 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).

When a claim is procedurally defaulted, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, i.e., the conviction of one who is actually innocent. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995); *Murray*, 477 U.S. at 495–96; *Breard v. Pruett*, 134 F.3d 615, 620 (4th Cir. 1998). "Cause" consists of "'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488).

## Statute of Limitations

28 U.S.C. § 2244(d)[12] provides a one-year statute of limitations in non-capital cases for those convicted in a state case. This one-year period is, however, tolled while properly filed post-conviction proceedings are pending and may otherwise be equitably tolled. *See* 28 U.S.C. § 2244(d)(2); *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000).

In order to be entitled to equitable tolling, a petitioner must establish that either some wrongful conduct by the respondents contributed to the delay in filing and completing state post-conviction review, or that circumstances beyond his control caused the delay. *See Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003); *Harris*, 209 F. 3d at 330 (4th Cir. 2000). ("[A]ny resort to equity must be reserved for those rare instances where due to circumstances external to the

---

[12]    28 U.S.C. § 2244(d) provides in full:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

   (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B)   the date on which the impediment to filing an application created by State action in violation of the constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

party's own conduct it would be unconscionable to enforce the limitation period against the party

and gross injustice would result.").

Discussion

Thompson presents three grounds for the court's consideration:

> (1) [t]hat Respondents through executive acts or omissions are confining him at the Maryland Correctional Institution Jessup (MCIJ) in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; (2) [t]hat by legislative acts or omissions (once released from incarceration, whether by gross negligence or not) the state created Mr. Thompson's fundamental liberty interest in his settled expectation of freedom and finality that was infringed by the State's decision to reincarcerate him; and; [sic] (3) [t]hat respondent State actor(s) seized Mr. Thompson based on an arrest warrant lacking sufficient probable cause in violation of his rights secured under the Fourth Amendment to the United States Constitution.

Pet. ¶ 1.[13]   Before the court can address the merits of Thompson's claims, however, the court

must determine whether the petition is properly before the court.

Respondents assert that Thompson has "failed to establish that he has exhausted fully his

state court remedies" and that, in any event, "the petition is untimely." Resp. 4, 8.  The basis for

Respondents' exhaustion argument is that Thompson failed to attach the relevant documents to

his federal petition and, therefore, "failed to meet his burden of demonstrating that the same legal

claims and the same supporting facts he presents in his Petition have been presented to the State

courts having jurisdiction to hear them." *Id.* at 7.  Thompson contends that all issues have been

---

[13]   Later in the Petition, Thompson raises six issues for the court's consideration, elaborating on and/or adding to his originally stated grounds for relief: (I) his "liberty interest is an interest common in the law – the right to preserve settled expectations and the need for finality," Pet. ¶¶ 41–53; (II) "the State of Maryland fully litigated its claim before Judge Jackson and waived any claim that [he] was wanted for first-degree assault occurring on June 18, 2007, or that [he] escaped from custody," *id.* at ¶¶ 54–60; (III) "the State arrested [him] on July 14, 2009, without probable cause in violation of the Fourth Amendment," *id.* ¶¶ 61–70; (IV) the "Honorable Judge Maureen Lamasney [of the Circuit Court of Prince George's County] committed reversible error in not affording [him] a hearing on [his] state petition for a writ of habeas corpus," *id.* ¶¶ 71–72; (V) "the three-judge panel committed error in denying [his] writ of habeas corpus," *id.* ¶¶ 73–79; and (VI) his "claim of executive abuse meets the 'conscience- - shocking' test." *id.* 15-28.

exhausted in state court. Pet. 2–3; Reply 2–3. He has attached the relevant documents to his reply.

The Court need not determine whether Thompson has, in fact, exhausted his state court remedies because the timeliness issue is dispositive of the matter. Therefore, the court proceeds directly to the timeliness of the petition.

Thompson argues that the petition is timely because it was filed within a year after the Court of Appeals of Maryland's denial of his request for writ of certiorari on May 11, 2012. Pet. 5; Reply 3–4. He calculated May 11, 2013, as one year after the Court of Appeals' order. Reply 4 n.1. Thompson states that he signed the petition and placed it in the hands of prison officials for mailing on April 30, 2013, prior to the expiration of the statute of limitations. *Id.* at 4.

Respondents counter that Thompson did not file his application for writ of habeas corpus in the state courts until after the statute of limitations had already expired. Resp. 9. Specifically, they argue that the statute of limitations began to run on or about July 18, 2009, "the date he was taken into custody to serve the 15-year term" imposed by Judge Jackson. *Id.* Both Thompson and Respondents state that Thompson did not file his state petition for writ of habeas corpus for immediate release until April 21, 2011.[14] *Id.* at 9; Pet. ¶ 29. Therefore, they argue, the statute of limitations for filing his federal petition had already run by the time he filed his application in the state courts. Resp. 9. The instant petition was not filed until April 30, 2013,[15] and, for this reason, Respondents argue the petition must be dismissed. *Id.*

Respondents are correct. Thompson overlooks the period between the time he was taken

---

[14] Thompson filed his initial application for writ of habeas corpus in the circuit court on October 4, 2010. Reply 2. Even were this earlier date used to calculate the running of the one-year limitation period, Thompson's petition is untimely.

[15] *See* preceding discussion regarding the date that the petition was filed, *supra* note 10.

in to custody by Prince George's County deputy sheriffs on July 17, 2009, and the filing of his original application for writ of habeas corpus in the circuit court on October 4, 2010, and subsequent petition for writ of habeas corpus for immediate release from illegal custody in the Court of Special Appeals. While the pendency of his state proceedings would have tolled the statute of limitations, it had already expired by the time he filed for relief in the state courts. Therefore, there was nothing to toll. Accordingly, although filed within a year after the Court of Appeals' denial of Thompson's appeal, Thompson's federal petition was untimely before his state proceedings began

Nor is Thompson entitled to equitable tolling pursuant to 28 U.S.C. § 2244(d)(2). Nothing in the record suggests that misconduct or some extraordinary circumstance prevented Thompson from timely filing for relief in the state courts immediately following his July, 2009, arrest. He has made no attempt to explain or justify why it took him over a year to file his application for writ of habeas corpus for immediate release from illegal custody. To the extent the delay might be attributed to his lack of understanding of the law, unfamiliarity with the law may not be used to justify equitable tolling. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Thompson has failed to satisfy his burden of demonstrating that equitable tolling is warranted. Thus, all the claims raised in his petition, to the extent they are cognizable, are time-barred. Accordingly, the Petition is DENIED and DISMISSED as untimely.

A habeas petitioner has no absolute entitlement to appeal a district court's denial of his motion. *See* 28 U.S.C. § 2253(c)(1). A certificate of appealability ("COA") may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253 (c)(2). When a district court dismisses a habeas petition solely on procedural grounds, a COA shall not be issued unless the petitioner can demonstrate both "that jurists of reason would find it

debatable whether the petition states a valid clam of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The court will not issue a COA because Thompson has not made the requisite showing.[16]

A separate order follows.

Dated: October 9, 2015

/S/

Paul W. Grimm
United States District Judge

dpb

---

[16]    Denial of a COA in the district court does not preclude Thompson from requesting a COA from the United States Court of Appeals for the Fourth Circuit.